UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. _____ |
| Plaintiff, | |
| v. | |
| $56,100 IN U.S. CURRENCY, | |
| Defendant. | |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***

The plaintiff, United States of America, through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Lucas B. Draisey, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

**NATURE OF THE ACTION**

1. This is an action to forfeit and condemn to the use and benefit of the United States of America $56,100 in U.S. Currency for violations of 21 U.S.C. § 841, *et. seq*.

**THE DEFENDANT *IN REM***

2. The defendant *in rem* is $56,100 in U.S. Currency ("the Defendant Property") seized from Phuc D. Le on March 18, 2022. The Defendant Property is in the custody of the United States Marshals Service.

1

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* to forfeit and condemn the Defendant Property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b). Upon the filing of this Complaint, the Plaintiff requests that the Clerk of Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the Plaintiff will execute upon the Defendant Property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because the Defendant Property is in this District.

## FACTS

6. On March 18, 2022, Trooper Matthew Wooding with the Minnesota State Patrol was patrolling southbound traffic on Interstate 35 near mile marker 9, outside of Albert Lea, Minnesota.

7. At about 10:52 p.m., Trooper Wooding saw a southbound vehicle approaching his position and suspected that the driver was speeding. Using his laser imaging, detection, and ranging (LIDAR) device, Trooper Wooding clocked the vehicle going 88 miles per hour on two readings, and 85 miles per hour on a third reading, exceeding the posted speed limit of 70 miles per hour.

8. After the vehicle passed Trooper Wooding's position, Trooper Wooding pulled onto the interstate and followed the vehicle for a short distance before activating his emergency lights and initiating a traffic stop.

9. The vehicle, a black 2019 Nissan Rogue, stopped on the right shoulder of the southbound lane near mile marker 8. Trooper Wooding approached the vehicle and observed only one occupant, a man.

10. Trooper Wooding introduced himself to the driver and told him that he had pulled him over for speeding. The driver apologized and said that he was going home, near Oklahoma City, Oklahoma, after visiting family in St. Paul, Minnesota. He explained that his uncle was in the hospital, that he had been visiting for three days, and was going back home for work. The driver appeared anxious, was stuttering, and paused before answering each of Trooper Wooding's questions.

11. Trooper Wooding asked for the man's driver's license, which identified the driver as Phuc D. Le of Yukon, Oklahoma. Oklahoma is a known source of domestic marijuana. State Troopers and DEA agents have noted a marked increase in couriers transporting marijuana from Oklahoma to Minnesota and other locations before returning to Oklahoma with large amounts of cash proceeds from illegal marijuana sales.

12. As Trooper Wooding walked back to his squad car, he shone his flashlight through the rear windows of the vehicle and saw that Le was not traveling with any luggage.

13. After Trooper Wooding returned from his squad car to request Le's motor-vehicle insurance information, he continued to probe Le about his trip. Le explained that

3

he stayed overnight at the hospital while he was in St. Paul, which Trooper Wooding found suspicious, given pandemic restrictions on hospital visitors.

14.    During this second trip to the vehicle, Trooper Wooding noticed the vehicle smelled strongly of marijuana and asked Le whether he had marijuana in the vehicle. Without prompting, Le opened the photo roll on his phone and showed Trooper Wooding several photos of large marijuana plants and said, "I am working here."

15.    Le denied having any marijuana in the car but offered to let Trooper Wooding search the car to confirm. Trooper Wooding asked, "Is that okay?" and Le responded, "Yeah." Trooper Wooding asked Le to get out of the vehicle and stand in front of the car while the Trooper conducted his search.

16.    While searching the back seat of the vehicle, Trooper Wooding found a backpack with only one change of clothes and a plastic bag containing a large amount of cash. Some of the cash was rubber-banded in stacks, and some was loose in the bag.

17.    When asked about the money, Le became emotional and claimed he was transferring the money for his employer, whom he had previously confirmed was a marijuana grower. Trooper Wooding detained Le in his squad car while he continued his search of the vehicle.

18.    A second Trooper, Jacob Ristau, soon joined the search. In addition to the bag of cash Trooper Wooding had already found, the Troopers found a second plastic bag wedged under the driver's-side rear seat, holding several large, rubber-banded stacks of cash. The Troopers estimated that Le had about $50,000 in cash in the vehicle. The

Troopers placed the cash in evidence bags, and Trooper Ristau transported it to the State Patrol station in Albert Lea, Minnesota.

19. The Troopers also decided to tow the vehicle to the station in Albert Lea for a more thorough search. When they arrived at the Albert Lea station, the Troopers searched the vehicle, but found no additional incriminating evidence.

20. The Troopers then brought Le into the station office where Trooper Ristau read Le a *Miranda* warning, first in English and then again using a Vietnamese interpreter. Le requested to speak to an attorney, so the Troopers asked him no further incriminating questions before releasing him.

21. Le's suspicious travel, the strong odor of marijuana on the currency and in the vehicle, the amount of cash, and the way it was bundled, all demonstrate a substantial connection between the money and a controlled-substance offense. The troopers determined that the cash was subject to forfeiture as proceeds of a controlled-substance offense and provided Le with a property receipt for the seized assets.

22. After releasing Le, Trooper Wooding transported the seized cash to the State Patrol's district office in Rochester, Minnesota. There, Trooper Wooding and Lieutenant Mitchell Elzen counted the money. While counting the money, the troopers both noted that the cash smelled like drugs.

23. Trooper Wooding and Lieutenant Elzen counted $56,200 in U.S. currency, mostly bundled in $1,000 stacks. The troopers sealed the Defendant Property in evidence bags, and Lieutenant Elzen placed the cash in a locked cabinet in his locked office to keep

it separate from drugs or other evidence while awaiting testing by a drug-sniffing dog and an ion scan.

24. Trooper Timothy Nibbelink arranged a controlled sniff of the Defendant Property with Trooper Patrick Buening and his canine partner on March 21, 2022. Trooper Buening's canine partner is trained to alert to the presence of narcotics. Outside the presence of the canine, Trooper Nibbelink took the Defendant Property from Lieutenant Elzen's office and placed it in a clean locker in the men's locker room at the Rochester station. When Trooper Buening brought the canine into the locker room, it positively alerted on the locker where Trooper Nibbelink had stored the Defendant Property.

25. Trooper Nibbelink also arranged an appointment with the Minnesota National Guard's counterdrug unit to conduct an ion scan of the currency on March 23, 2022. Trooper Nibbelink brought the currency to the Minnesota National Guard Armory in St. Paul, Minnesota where Sergeant Major Derek Bronson conducted the ion scan. Trooper Nibbelink presented twelve random bundles of cash from the evidence bags to Sergeant Major Bronson, who then scanned each bundle. The results of the scan showed a high concentration of cocaine on all twelve bundles of cash, as well as a high concentration of methamphetamine on the $100 and $50 bundles.

26. Trooper Nibbelink and Sergeant Hammes deposited the Defendant Property into the State Patrol's account at Merchant's Bank on March 28, 2022. The teller at Merchant's Bank counted $56,100 and deposited that amount into the State Patrol's account.

## BASIS FOR FORFEITURE

27. The allegations in the preceding paragraphs are realleged and incorporated by reference.

28. The defendant $56,100 in U.S. Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it was furnished or intended to be furnished in exchange for a controlled substance, constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act.

## CLAIM FOR RELIEF

29. The plaintiff requests that the Court issue a warrant for the arrest and seizure of the Defendant *in rem*, that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the Defendant in rem, that the Defendant in rem be forfeited and condemned to the United States of America, that the plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as this Court deems proper and just.

Dated:  February 16, 2023

ANDREW M. LUGER
United States Attorney

*/s/ Lucas B. Draisey*

BY:  LUCAS B. DRAISEY
Assistant U.S. Attorney
Attorney ID No. 0401625
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone:  612-664-5600
Lucas.Draisey@usdoj.gov

## VERIFICATION

I, Burton V. Crary, verify and declare under penalty of perjury as follows:

I am and have been a Task Force Officer for the Drug Enforcement Administration ("DEA") since April 20, 2022. I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information provided to me by other law enforcement agencies and officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and officers, as well as my investigation of this case, together with others, as a DEA Task Force Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: February 13, 2023

*s/ Burton Crary*
BURTON V. CRARY
Task Force Officer
U.S. Drug Enforcement Administration